AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

LODGED
CLERK, U.S. DISTRICT COURT
**02/18/2026**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
**02/18/2026**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KH _____ DEPUTY

| | |
|---|---|
| United States of America<br><br>Plaintiff<br><br>v.<br><br>LUIS OSCAR MARTINEZ-MUNOZ,<br><br>Defendant. | Case No. 8:26-mj-00105-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of February 27, 2022, in the county of Orange, in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation or Removal |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Gabriel Denton*
*Complainant's signature*

Gabriel Denton, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    February 18, 2026

_____
*/s/ Autumn D. Spaeth*
*Judge's signature*

City and state:   Santa Ana, California

Hon. Autumn Spaeth, U.S. Magistrate Judge
*Printed name and title*

SAUSA:  Elizabeth Bisland (x0319)

## AFFIDAVIT

I, Gabriel Denton, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint against and arrest warrant for LUIS OSCAR MARTINEZ-Munoz ("defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF SPECIAL AGENT GABRIEL DENTON

1.   I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since April 2007.  I have completed the Criminal Investigator Training Program and Special Agent Basic Training at the Federal Law Enforcement Training Center, where I received training in Federal laws and regulations.  I regularly refer to these laws and regulations to perform my duties.

3.    I am currently assigned to the Homeland Security Investigations ("HSI") Integrated Operations Group Task Force ("Task Force").  As part of this Task Force, I investigate various immigration crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations.  As a result of my collaboration with these DHS employees on this Task Force, I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for federal crimes.

### III.  TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

4.    Based on my training and experience and communication with DHS employees on the Task Force, I know the following:

a.    Every person has a unique set of fingerprints.  I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints.  In many cases, DHS and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b.    Moreover, when a person is fingerprinted by DHS agencies, such as ICE (formerly the Immigration and Naturalization Service), those unique fingerprint identifiers

2

are associated with an individual's unique alien number ("A-number") and alien file ("A-file").  An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage.  That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

5.    Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

## IV. STATEMENT OF PROBABLE CAUSE

6.    On or about February 14, 2026, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible

3

for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on defendant's biometric fingerprint information that, on that same date, he was arrested by the Santa Ana Police Department ("SAPD") within the Central District of California, for Trespassing on Railroad Property, in violation of California Penal Code Section 369i(a)(1).

7.    Defendant is currently in custody with the Orange County Sheriff's Department ("OCSD").  Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for defendant while he is in a custodial setting because once defendant is released from custody, he may abscond or evade apprehension, particularly in light of his prior removal and unlawful reentry.  Effectuating an arrest while defendant is in custody is materially safer for officers and defendant and presents a significantly lower risk of flight or resistance.  Arrests in a controlled environment also reduce the need for high-risk operations in the community and minimize potential harm to the public.

8.    I compared a unique fingerprint identifier from the arrest referenced above against those contained in the immigration and removal records retained for defendant in DHS indices.  I have determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference defendant, a previously removed alien.

9.    On or about February 18, 2026, I conferred with other law enforcement officers, including DHS personnel, and reviewed

4

records associated to defendant's unique fingerprint identifiers that are contained in DHS indices.  I learned the following about defendant's immigration history:

   a.    Defendant is a citizen and national of Mexico.

   b.    On or about June 2, 2013, defendant was ordered removed from the United States to Mexico.  On or about June 3, 2013, defendant was physically removed from the United States to Mexico.

   c.    On or about June 29, 2013, defendant was ordered removed from the United States to Mexico.  On or about that same date, defendant was physically removed from the United States to Mexico.

   d.    Since defendant's most recent physical removal from the United States noted above, defendant was found within Orange County, within the Central District of California, on February 27, 2022, when he was arrested by the Tustin Police Department ("TPD") for Possession of Unlawful Paraphernalia, in violation of California Health and Safety Code Section 11364(a); Operating a Bicycle on a Road in the Wrong Direction, in violation of California Vehicle Code Section 21650.1; and Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11377(a), resulting in a PERC notification on the same date as arrest.

   e.    There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General to re-enter the United States since defendant's most recent removal.  Based upon my training and experience, as

5

well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

### V.  CONCLUSION

10.  For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _18_ day of
February 2026


_____/s/ Autumn D. Spaeth_____
HONORABLE  AUTUMN SPAETH
UNITED STATES MAGISTRATE JUDGE